IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICKY L. BROWN, JR.,

      Plaintiff,                    No. 2:11-cv-0389 DAD (PC)

     vs.

IGI C/O WHEELER, et al.,

      Defendants.             ORDER

_____/

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. The parties have previously consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c). (See Order filed Jan. 31, 2013 (Doc. No. 54).) The action is proceeding on the claim set forth in his original complaint (Doc. No. 1), that the defendants subjected him to the excessive use of force and an unlawful body cavity search. The matter is now before the court on defendants' motion for summary judgment filed March 30, 2012 .[1] (Doc. No. 43.)

---

[1] As noted, defendants filed the motion for summary judgment on March 30, 2012. After receiving an extension of time to do so, plaintiff filed his opposition to the pending motion on May 29, 2012 . (Doc. No. 48.) Defendants filed a reply on June 4, 2012. (Doc. No. 49.) On July 25, 2012, following the decision in Woods v. Carey, 684 F.3d 934 (9th Cir. 2012), defendants filed a motion requesting that plaintiff given the contemporaneous notice required by

1

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to

---

Woods and an opportunity to file supplemental briefing with respect to the pending motion for summary judgment. (Doc. No. 50.) By order filed July 31, 2012 (Doc. No. 51), the court granted defendants' motion and also granted plaintiff a period of thirty days in which to file and serve a supplemental opposition to defendants' motion for summary judgment and granted defendants fifteen days thereafter in which to file and serve any supplemental reply. Neither party elected to file the invited supplemental briefing.

establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On June 15, 2011 and again on July 31, 2012, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Woods v. Carey, 684 F.3d 934 (9th Cir. 2012), Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). (Doc. Nos. 16, 51.)

ANALYSIS

I. Facts[2]

At all times relevant to this action, plaintiff was an inmate incarcerated at High Desert State Prison (High Desert) and housed in Building 3 on Facility C. (Pl.'s Resp. to Defs.' Req. for Admissions, Ex. A to Decl. of Diana Esquivel in Supp. of Defs.' Mot. for Summ. J. (Esquivel Decl.), filed Mar. 30, 2012 (Doc. 43-10).) Late on the morning of February 11, 2009, as a result of several incidents that took place on Facility C, the yard was recalled by prison officials and inmates were required to submit to unclothed searches before returning to their cells. (Decl. of A. Audette in Supp. of Defs.' Mot. for Summ. J., filed Mar. 30, 2012 (Audette Decl.) (Doc. No. 43-3), at ¶ 2.) At approximately 1:15 p.m. defendant Von Rader and another correctional officer were conducting the unclothed body searches. (Decl. of B. Von Rader in Supp. of Defs.' Mot. for Summ. J., filed Mar. 30, 2012 (Von Rader Decl.) (Doc. No. 43-7), at ¶ 3.) Plaintiff was ordered to stay outside and undress. (Pl.'s Decl. in Opp'n to Defs.' Mot. for Summ. J. (Pl. Decl.), filed May 29, 2012, at ¶ 6.) However, plaintiff did not comply with that order. (Id.)

/////

---

[2] Except as specifically noted, the following facts are undisputed.

4

1    Defendants have presented the following evidence of what took place next.
2 Plaintiff finally complied with the order to remove his underwear. (Von Rader Decl. at ¶ 7.)
3 When plaintiff was ordered to squat and cough he turned to his left, which prevented the officers
4 from seeing his rectal area. (Id. at ¶ 8.) Defendant Von Rader ordered plaintiff to turn away
5 from the officers and to squat and cough. (Id. at ¶ 9.) Plaintiff did so quickly, without allowing
6 officers to "fully see his rectal area." (Id. at ¶ 10.) Defendant Von Rader ordered plaintiff to
7 squat and cough again, and took out his pepper-spray canister "because of [plaintiff]'s suspicious
8 conduct." (Id. at ¶ 11.) As plaintiff squatted, defendant Von Rader "saw a white object
9 protruding from his rectum" and defendant Von Rader "yelled that [plaintiff] had a weapon. (Id.
10 at ¶ 12.) Plaintiff began to run and, as he did so, he removed the weapon from his rectum. (Id. at
11 ¶ 13.)

12    Defendant Fleming observed plaintiff "reach back into his rectum and retrieve and
13 unidentified objection." (Decl. of B. Fleming in Supp. of Defs.' Mot. for Summ. J., filed Mar.
14 30, 2012 (Fleming Decl.) (Doc. No. 43-8), at ¶ 6.) Plaintiff then ran towards two cells with the
15 object in his hand. (Id. at ¶ 7.) Defendant Fleming and another officer yelled for plaintiff to drop
16 the object and get down. (Id. at ¶ 8.) Plaintiff ignored those orders and defendant Fleming
17 pepper sprayed plaintiff in the face and upper body. (Id. at ¶ 9.) As that happened, plaintiff
18 threw the weapon under one of the cell doors. (Id. at ¶ 9.)

19    Defendant Von Rader observed pepper spray hit plaintiff in the face as plaintiff
20 went down onto his stomach. (Von Rader Decl. at ¶ 15.) Defendant Von Rader "kept [his] eyes
21 on [plaintiff]'s hands and went to [plaintiff's] right side." (Id. at ¶ 16.) Defendant Audette went
22 to plaintiff's left side. (Id. at ¶ 17.) Defendant Audette ordered plaintiff to place his hands
23 behind his back, but plaintiff refused to comply with that order and put his hands under his torso.
24 (Audette Decl. at ¶¶ 7-8.) After plaintiff failed to comply with repeated orders by correctional
25 officers, defendant Audette knelt beside him and used his right hand to pull plaintiff's left arm
26 out from under his body. (Id. at ¶ 9.) Plaintiff then complied with defendant Audette's order and

brought his right hand out. (Id.) Defendant Audette placed his "right knee on [plaintiff]'s upper back" and "held [plaintiff] down with his hands." (Id. at ¶ 10; Von Rader Decl. at ¶ 18.) Defendant Von Rader placed plaintiff in handcuffs and leg restraints. (Id. at ¶ 19.)

Thereafter, defendants Williams and Goetchius escorted plaintiff to the holding cell in the medical clinic as ordered by defendant Audette. (Decl. of R. Goetchius in Supp. of Defs.' Mot. for Summ. J., filed Mar. 30, 2012 (Goetchius Decl.) (Doc. No. 43-5), at ¶ 5.) Neither defendant dropped plaintiff on the floor of the holding cell, nor did defendant Goetchius hold plaintiff down on the floor of that cell. (Id. at ¶ 11.)

While plaintiff was in the holding cell, defendant Wheeler observed "what appeared to be a white-paper material between [plaintiff]'s buttocks." (Decl. of B. Wheeler in Supp. of Defs.' Mot. for Summ. J., filed Mar. 30, 2012 (Wheeler Decl.) (Doc. No. 43-8), at ¶ 6.) Defendant Wheeler "informed medical staff that [plaintiff] might have something concealed in his anal area." (Id. at ¶ 7.) Defendant Wheeler was subsequently informed after inspection of plaintiff's rectal area that medical staff did not find anything. (Id.)

While plaintiff was being restrained, defendant Fleming and another correctional officer looked in the cell where plaintiff had tossed the object. (Fleming Decl. at ¶ 10-11.) They found a "weapon made from flat metal, sharpened to a point at one end and a clear plastic handle at the other end." (Id. at ¶ 19.) Defendant Fleming placed the weapon in a container, "processed it as required under prison policy and procedures" and went to the holding cell where plaintiff was being held and read him his Miranda warning. (Id. at ¶ 20-21.) Defendant Fleming issued a prison disciplinary report against plaintiff for possession of a weapon. (Ex. C to Esquivel Decl.) Plaintiff was eventually found guilty of that disciplinary charge and assessed 360 days loss of credit. (Id.) In addition, on November 19, 2009, plaintiff pleaded guilty in state court to the

/////
/////
/////

criminal charge of possession of a sharp instrument and received a sentence of eight years in prison. (Ex. D to Defendants' Request for Judicial Notice.[3])

In opposition to defendants' motion for summary judgment plaintiff has presented evidence painting a different picture of what took place after he was ordered by correctional officers to stay outside and undress. Plaintiff's evidence indicates the events as follows. As plaintiff was proceeding to his cell after refusing to comply with the officer's order to stay outside and undress, plaintiff heard someone yell "spray that motha fucker" and he was tackled from behind to the floor by defendant Fleming. (Pl.'s Decl. in Opp'n to Defs.' Mot. for Summ. J., filed May 29, 2012 (Pl. Decl.), at ¶¶ 6-7.) While plaintiff was "laying dazed on the C-section dayroom floor," defendant Fleming and two other officers "emptied a cannister each of MK9 OC pepper spray into [his] face." (Id. at ¶ 8.) Plaintiff was not resisting the officers when they pepper sprayed him. (Id. at ¶ 9.) Ankle shackles were then placed on plaintiff very tightly and dug into his skin "causing immense pain." (Id. at ¶ 10.)

After being placed in restraints, plaintiff was "dragged in the nude through freezing weather from C3 housing unit to the infirmary holding cage by defendants Fleming, Williams, Wheeler, Von Rader, Audette and Goetchius." (Id. at ¶ 11.) The pepper spray froze on plaintiff's face and he was unable to breathe. (Id. at ¶ 12.) Defendants "kept yelling threats at [plaintiff], as they took turns roughly dragging [him] in the snow." (Id. at ¶ 13.) When they arrived at the holding cage, defendants Fleming, Wheeler, and Von Rader "dropped [plaintiff] face down in the holding cage" knocking the breath out of him. (Id. at ¶ 14.)

Defendant Wheeler told a nurse to check plaintiff's anal cavity. (Id. at ¶ 15.) One of the defendants put his foot on the back of plaintiff's neck and plaintiff's ankles were pinned down as someone spread his buttocks. (Id. at ¶ 16.) Plaintiff heard defendant Wheeler ask the nurse if she saw anything, and she replied "she didn't know, but there might be something in

---

[3] Defendants' Request for Judicial Notice of the abstract of judgment from this conviction is granted. See Fed. R. Evid. 201.

there." (Id. at ¶ 17.) Then plaintiff "heard Defendant Wheeler pop his latex gloves as he forcefully inserted his fingers into [plaintiff's] anus." (Id. at ¶ 18.) Defendants Von Rader and Goetchius held plaintiff down while he was screaming for help, telling him to "shut up" and defendant Fleming "kept saying nobody could hear me and if so, they would'nt [sic] help." (Id. at ¶ 19.) Defendant Wheeler "kept ramming his fingers in [plaintiff]'s anus," saying "'welcome to High Desert boy.'" (Id. at ¶ 20.) Plaintiff was "pinned down in the above fashion, while being sexually violated for about five minutes without cessation." (Id. at ¶ 21.) Thereafter plaintiff was left on the cold floor of the holding cage naked, handcuffed and shackled, and without access to water. (Id. at ¶ 22.) The handcuffs and shackles were extremely tight on plaintiff and caused swelling in his hands and ankles. (Id. at ¶ 24.) Plaintiff's body was numbed by the cold, and he was heaving because he couldn't breathe due to the effects of the pepper spray. (Id. at ¶¶ 23, 26.) Plaintiff stayed in that condition from approximately 1:40 p.m. to 7:15 p.m. (Id. at ¶ 28.) At 7:15 p.m., defendant Steninger gave plaintiff a small cup of water when he told her he had not been decontaminated from the pepper spray. (Id. at ¶ 29.) She told him she could not give him anymore than that. (Id. at ¶ 30.) Plaintiff was not provided any access to water for nine hours. (Id. at ¶ 39.) Plaintiff did plead guilty in state court on November 19, 2009 to possession of the weapon. (Id. at 43.)

II. Defendants' Motion

Initially, defense counsel sought summary judgment on behalf of all defendants with respect to all of plaintiff's claims. In their reply, however, defense counsel concedes that plaintiff's declaration raises triable issues of fact concerning the actions of defendants Wheeler, Von Rader, Goetchius and Fleming once plaintiff was in the medical clinic. (Reply to Pl.'s Opp'n to Mot. for Summ. J., filed June 4, 2012 (Doc. No. 49), at 2.) Other than this concession the defendants continue to seek summary judgment in their favor on plaintiff's claims arising from the incident in the housing unit, the escort of plaintiff to the medical clinic, and the events which took place on the evening of February 11, 2009.

First, defendants contend that plaintiff's claims arising from the incident in the housing unit on February 11, 2009 are barred by the rule announced in Heck v. Humphrey, 512 U.S. 477 (1994) and its progeny because plaintiff's success on the merits of those claims would necessarily implicate the validity of both his disciplinary and criminal convictions that stemmed from and followed the incident. Second, defendants contend that while in the housing unit and during the escort they only used the minimal amount of force necessary to restrain plaintiff and compel his compliance with their orders. Third, defendants claim that there is no dispute that plaintiff was allowed to decontaminate during his being escorted to the medical clinic by being exposed to cool air, and that no defendant ignored plaintiff's need to decontaminate after being subjected to pepper spray. Fourth, defendants argue that plaintiff has not raised any factual dispute about the involvement of defendants Audette and Williams in the events alleged to have taken place in the medical clinic. Finally, defendants contend they are entitled to qualified immunity on all of plaintiff's claims upon which they seek summary judgment.

A. Heck v. Humphrey

Under the rule announced in Heck,

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . . A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed . . . .

512 U.S. at 486–87, 114 S.Ct. 2364. Heck says that "if a criminal conviction arising out of the same facts stands and is

fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed." Smithart v. Towery, 79 F.3d 951, 952 (9th Cir.1996). As the Supreme Court explained, the relevant question is whether success in a subsequent § 1983 suit would "necessarily imply" or "demonstrate" the invalidity of the earlier conviction or sentence under § 148(a)(1). Heck, 512 U.S. at 487, 114 S.Ct. 2364; see also Cunningham v. Gates, 312 F.3d 1148, 1153–54 (9th Cir.2003) (as amended) (Heck bars suits "based on theories that 'necessarily imply the invalidity of [the plaintiff's] convictions or sentences.'") (quoting Heck, 512 U.S. at 487, 114 S.Ct. 2364).

Smith v. City of Hemet, 394 F.3d 689, 695 (9th Cir. 2005).

Here, plaintiff was convicted of possession of a weapon and possession of a sharp objection both in prison disciplinary[4] and state criminal proceedings, respectively. Defendants contend that plaintiff's success on his Eighth Amendment claim against them would necessarily imply the invalidity of those two convictions because the fact that plaintiff was in possession of a weapon was the only reason defendants used force against him. However, the reason for the use of force is only one of the factors considered in determining whether a particular application of force was excessive. See Section IIB, infra.

Of course, it is not the case that if a prisoner resists a correctional officer the officer may use whatever amount of force he or she wishes to subdue the individual. See Whitley v. Albers, 475 U.S. 312, 321 (1986). Accordingly, for instance, an Eighth Amendment excessive force claim by a prisoner against a correctional officer will often not be fundamentally inconsistent with the validity of a prison disciplinary conviction for resisting staff resulting from the same incident. See e.g., Hooper v. County of San Diego, 629 F.3d 1127, 1133 (9th Cir. 2011) (excessive force claim not Heck-barred because "[a] holding in Hooper's § 1983 case that the use of the dog was excessive force would not 'negate the lawfulness of the initial arrest

---

[4] The holding in Heck applies in the context of prison disciplinary convictions where the loss of good time credits is assessed. Edwards v. Balisok, 520 U.S. 641, 648 (1997) (claims for declaratory relief and money damages challenging prison disciplinary procedures were Heck-barred because the nature of the allegations, if proven, would necessarily imply the invalidity of the result of the prison disciplinary hearing); see also Nonnette v. Small, 316 F.3d 872 (9th Cir. 2002).

attempt, or negate the unlawfulness of Hooper's attempt to resist it when she jerked her hand away from Deputy Terrell.'") (internal brackets omitted); Smith, 394 F.3d at 696 ("Under Heck, Smith would be allowed to bring a § 1983 action, however, if the use of excessive force occurred subsequent to the conduct on which his conviction was based."); Smithart v. Towery, 79 F.3d 951, 952-53 (9th Cir. 1996) (reversing the district court's dismissal of an excessive force action brought by an arrestee under the Fourth Amendment, because a successful result for the plaintiff would not necessarily imply the invalidity of the plaintiff's arrest or conviction for assault with a deadly weapon where the plaintiff maintained that the defendant arresting officers used force far greater than required for his arrest and out of proportion to the threat which he posed); see also Huey v. Stine, 230 F.3d 226, 230 (6th Cir. 2000) ("In general, the federal courts hold that Eighth Amendment claims do not run afoul of Heck because the question of the degree of force used by a . . . correctional officer is analytically distinct from the question whether the plaintiff violated the law."), abrogated on other grounds by Muhammad v. Close, 540 U.S. 749 (2000); Shelton v. Chorley, No. 1:07-CV-560-MHM, 2011 WL 1253655, at *4 (E.D. Cal. Mar. 31, 2011) (finding that the prisoner plaintiff's excessive use of force claim against correctional officer was not Heck-barred despite plaintiff's prison disciplinary conviction for battery on a peace officer because "it is possible that Plaintiff attempted to batter Defendant *and* that Defendant used excessive force in subduing Plaintiff.")

In this case, the factual context in which the force was used as well as the degree of force is disputed by the parties. In any event, success by plaintiff on his claims that the defendants used excessive force in restraining him and escorting him to the medical clinic would not necessarily require the invalidation of either plaintiff's prison disciplinary or criminal conviction for possession of a weapon in prison. Therefore, defendants are not entitled to summary judgment in their favor on this ground.

/////

/////

      B.  Excessive Force – Housing Unit and Escort to Medical Clinic

The use of excessive force by a prison official violates the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1 (1992). Determining whether there has been an Eighth Amendment violation turns upon "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Id. at 6 (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). See also Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002).

To determine whether the use of force violates the Eighth Amendment, the court should consider the "extent of injury . . ., the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Hudson, 503 U.S. at 7 (quoting Whitley, 475 U.S. at 321). See also LeMaire v. Maass, 12 F.3d 1444, 1454 (9th Cir. 1993) (considering need for application of measure or sanction complained of, relationship between need and measure or sanction used, extent of any injury inflicted and extent of surrounding threat to safety of staff and inmates); Spain v. Procunier, 600 F.2d 189, 195 (9th Cir.1979) (guards may use force only in proportion to the need therefore in each situation).

As is apparent from the evidence submitted by the parties on summary judgment as set forth above, there are a significant number of material facts in dispute regarding the events of February 11, 2009. For the reasons explained below, those disputes preclude the granting of summary judgment in favor of any defendant except defendant Steninger, who is not implicated in plaintiff's Eighth Amendment excessive use of force claim.[5]

---

[5] The court is mindful that the Ninth Circuit has repeatedly cautioned lower courts to take care in deciding cases involving excessive use of force claims at the summary judgment stage. In this regard, that court has explained:

> Because [the excessive use of force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that

### 1. Defendant Fleming

It is undisputed that defendant Fleming pepper sprayed plaintiff. In moving for summary judgment, defendant Fleming has presented evidence that he applied pepper spray to plaintiff only after plaintiff refused to comply with repeated orders to drop the object he was holding and to get down. Plaintiff, on the other hand, avers in his sworn declaration that defendant Fleming and two other officers each unloaded an entire canister of pepper spray in plaintiff's face as he was lying dazed on the floor after being taken to the ground. If plaintiff's version of events as set forth in his declaration were to be believed, a reasonable jury could conclude that defendant Fleming's use of pepper spray on plaintiff constituted the excessive use of force.

Plaintiff also avers that defendant Fleming was one of the officers who dragged plaintiff naked through freezing weather to the infirmary holding cage and dropped him face down on the ground of that cage. Defendant Fleming has presented his own declaration in which he denies even being part of the escort about which plaintiff complains. If plaintiff was restrained in handcuffs and ankle restraints and his version of the manner in which he was escorted to the infirmary and dropped onto the floor of the holding cage is believed, a reasonable jury could conclude that he was subjected to excessive use of force in that regard.

For the foregoing reasons, disputes of fact preclude the granting of summary judgment in favor of defendant Fleming on plaintiff's excessive force claim.

### 2. Defendant Von Rader

It is undisputed that defendant Von Rader placed plaintiff in handcuffs and ankle restraints. Plaintiff avers that those restraints were out on him in an excessively tight manner to

---

summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.

Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002). See also Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005); Lolli v. County of Orange, 351 F.3d 410, 415-16 (9th Cir. 2003). This case is no different.

1  the point of digging into his skin and causing swelling. This factual dispute established by the
2  evidence before the court alone precludes the granting of summary judgment for defendant Von
3  Rader on this aspect of plaintiff's excessive force claim.
4          Plaintiff also avers that defendant Von Rader was one of the officers who dragged
5  plaintiff naked through freezing weather to the infirmary holding cage and dropped him face
6  down on the ground of the holding cage. Defendant Von Rader denies even being part of the
7  escort. As discussed above, however, if plaintiff's version of these events is believed, a
8  reasonable jury could conclude that plaintiff was subjected to excessive use of force by defendant
9  Von Rader while being taken to the infirmary and placed in the holding cage.
10         These disputes of material fact preclude summary judgment for defendant Von
11 Rader on plaintiff's excessive force claim.
12         3.  <u>Defendant Audette</u>
13         Plaintiff also avers that defendant Audette was one of the officers who dragged
14 plaintiff naked through freezing weather to the infirmary holding cage. Defendant Audette also
15 denies being part of the team of correctional officers who took plaintiff to the infirmary. Again,
16 this dispute of material fact established by the evidence before the court precludes the granting of
17 summary judgment for defendant Audette on plaintiff's excessive force claim.
18         4.  <u>Defendant Williams</u>
19         There is no dispute that defendant Williams was one of the officers who took
20 plaintiff to the infirmary holding cage. Under the evidence presented by the parties on summary
21 judgment, there is a dispute, however, as to whether the correctional officers dragged plaintiff
22 naked through freezing weather to the holding cage. This dispute of fact precludes the granting
23 of summary judgment in favor of defendant Williams with respect to plaintiff's excessive force
24 claim.
25 /////
26 /////

#### 5. Defendant Goetchius

There is no dispute that defendant Goetchius was one of the officers who took plaintiff to the infirmary holding cage. As noted above, the evidence before the court reflects a factual dispute between the parties, however, as to whether the officers dragged plaintiff naked through freezing weather to the holding cage. This dispute of fact precludes summary judgment for defendant Goetchius on plaintiff's excessive force claim.

#### 6. Defendant Wheeler

Plaintiff avers that defendant Wheeler was one of the officers who dragged plaintiff naked through freezing weather to the infirmary holding cage and dropped him face down on the ground of the holding cage. Defendant Wheeler also denies being part of the escort. As discussed above, if plaintiff's version of events as reflected in his declaration is believed a reasonable jury could conclude that he was subjected to excessive use of force by defendant Wheeler while being taken to the infirmary and placed in the holding cage. This dispute of material fact preclude summary judgment for defendant Wheeler on plaintiff's excessive force claim.

### C. Decontamination

Plaintiff claims that he was forced to lie on the holding cage floor from 12:40 p.m. until 7:15 p.m. on the afternoon/evening in question without being decontaminated following the use of pepper spray on him, and that even thereafter defendant Steninger refused to do more than pour a small cup of water over his head. Plaintiff's claim in this regard is grounded in the Eighth Amendment's proscription against deliberate indifference to serious medical needs. See Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002). Such a claim has two elements: the presence of a serious medical need, and a deliberately indifferent response to that need by defendants. Id. Defendants seeks summary judgment in their favor on this claim, contending that plaintiff was in fact decontaminated by being exposed to cool air during his escort by officers to the clinic.

/////

It is not, and could not be, disputed that plaintiff's exposure to pepper spray constituted a serious medical need. There is also no dispute that plaintiff was taken outside by correctional officers after he was pepper sprayed. There are, however, significant factual disputes between the parties over whether the exposure to cold air alone provided adequate decontamination. Defendants contend that plaintiff has not presented facts which would create such a dispute. However, plaintiff has averred that the pepper spray froze on his face, and that he could not breathe due to its effects which in turned caused him to "heave" while he was on the floor of the holding cage. Plaintiff has also averred that after almost seven hours in this condition one cup of water was insufficient to decontaminate him and defendant Steninger refused to provide any more than that.

These disputes with respect to material facts preclude the granting of summary judgment in favor of the officers who plaintiff avers were involved in his escort and also prevents the granting of summary judgment for defendant Steninger. If plaintiff's version of events is believed, a reasonable jury could believe that those defendants were deliberately indifferent to plaintiff's need for relief from the effects of the pepper spray.

D. Qualified Immunity

Finally, defendants contend they are entitled to qualified immunity with respect to plaintiff's claims against them. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Resolving the defense of qualified immunity involves a two-prong analysis: courts look to whether the facts "show the officer's conduct violated a constitutional right," and "whether the right was clearly established" at the time of the alleged unlawful action. See Saucier v. Katz, 533

/////

/////

U.S. 194, 201 (2001), overruled in part by Pearson.<sup>6</sup>

> "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202, 121 S.Ct. 2151. The key inquiry is whether a reasonable person could have believed his actions lawful at the time they were undertaken. Anderson v. Creighton, 483 U.S. 635, 646, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

Bull v. City and County of San Francisco, 595 F.3d 964, 1002 (9th Cir. 2010).

The same disputes of material fact that preclude the granting of summary judgment in favor of the defendants on the merits of plaintiff's claims also preclude a finding that any of the defendants are entitled to qualified immunity. Were plaintiff's version of events proved to be true, no reasonable correctional officer could have believed that the actions taken by defendants were lawful.

For all of the foregoing reasons, defendants' motion for summary judgment will be denied. In due course, the court will issue a further scheduling order setting dates for pretrial statements, pretrial conference, and jury trial. However, before issuing that further scheduling order, the court will set a mandatory settlement conference in this case. If available at his institution of confinement, the court may order that plaintiff participate in the settlement conference by way of video-conferencing. Pursuant to Local Rule 270(b), the parties will be directed to inform the court in writing as to whether they wish to proceed with the settlement conference before the undersigned magistrate judge and waive any disqualification stemming therefrom or if they prefer instead to be referred to another Magistrate Judge of this court for the settlement conference.

/////

---

[6] The United States Supreme Court has held that courts may exercise " sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009).

CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' March 30, 2012 motion for summary judgment is denied.

2. Within twenty-one days of the date of this order, each party shall inform the court in writing as to whether they wish to proceed with the settlement conference before the undersigned magistrate judge and waive any disqualification or if they prefer instead to be referred to another Magistrate Judge of this court for the settlement conference.  If the parties wish to proceed before the undersigned magistrate judge, each party shall return to the court the consent form for settlement conferences provided with this order.  If the parties do not wish the undersigned magistrate judge to preside at the settlement conference, each party shall file a declaration stating he wishes to be referred to another Magistrate Judge of this court for the settlement conference; and

3. The Clerk of the Court is directed to send each party the consent form for settlement conferences.

DATED: March 13, 2013.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:12
brow11cv0389.msj